**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 11 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MORGAN STANLEY & CO. LLC; MORGAN STANLEY SMITH BARNEY, LLC, | No.   15-17092 |
| Plaintiffs-Appellees, | D.C. No. 1:15-cv-01291-LJO-JLT |
| v. | MEMORANDUM* |
| DAVID COUCH, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, Chief District Judge, Presiding

Argued and Submitted June 17, 2016
San Francisco, California

Before:    SCHROEDER, TASHIMA, and OWENS, Circuit Judges.

In 2007, Plaintiffs Morgan Stanley & Co. LLC and Morgan Stanley Smith

Barney, LLC (together, "Morgan Stanley") hired Defendant David Couch as a

financial advisor.  Upon his hiring, Couch signed an employment contract that

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

included an agreement to arbitrate "any controversy or claim" arising out of his employment, "excluding statutory employment claims."

In 2013, Morgan Stanley fired Couch. Couch sued Morgan Stanley, pleading violations of the California Labor Code and economic interference under California common law. The parties proceeded to litigate Couch's claims on the merits for over a year. In 2015, after discovery had closed and mere days before summary judgment motions were due, Couch filed a separate set of claims with the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization that often serves as an arbitration forum for financial sector disputes. In response, Morgan Stanley filed this action for declaratory relief, arguing that by including the economic interference claims in his complaint, and then litigating those claims for more than a year, Couch had waived his arbitration rights under the employment contract. Morgan Stanley moved to enjoin preliminarily any further FINRA proceedings, pending resolution of its declaratory judgment action. The district court granted the motion.

Couch appeals. He argues that (1) the district court lacked jurisdiction to entertain Morgan Stanley's suit; (2) the arbitrator, not the court, should decide whether Couch waived his right to arbitrate; and (3) the district court abused its discretion in granting the preliminary injunction.

We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm the district court's preliminary injunction order.

**1.** Couch challenges the district court's jurisdiction to entertain Morgan Stanley's declaratory judgment action. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not itself confer jurisdiction over a claim; rather, the Act "merely provides an additional remedy in cases where jurisdiction is otherwise established." *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988). Here, it is undisputed that the parties are diverse from one another and the amount in controversy in the underlying dispute exceeds $75,000, exclusive of interest and costs. Thus, the district court had federal subject matter jurisdiction to adjudicate Morgan Stanley's claims. 28 U.S.C. § 1332(a); *see also Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1474 (9th Cir. 1997) (holding that a claim satisfying diversity requirements satisfies jurisdictional requirements for declaratory judgment).[1]

**2.** Couch next contends that the FINRA arbitrator, rather than the district court, should have decided whether Couch waived his right to arbitrate. It is

---

[1] Couch contends that because the arbitration agreement was "self-executing," there was no Article III case or controversy for the district court to adjudicate. This argument fails. The parties dispute the enforceability of the arbitration clause, and thus the action meets jurisdictional requirements. *See Goldman Sachs v. City of Reno*, 747 F.3d 733, 737-38 (9th Cir. 2014).

3

presumptively for the district court to decide whether a party waived its arbitration rights by litigating otherwise-arbitrable claims. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008). The presumption that a court should decide issues of waiver by litigation conduct may be rebutted by a showing of "clear and unmistakable evidence" that the parties intended to submit the issue to arbitration. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013).

The arbitration clause at issue in this case states that "any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration." This language, requiring that the arbitrability of individual *issues* or *claims* be resolved by the arbitrator, does not encompass disputes over whether the clause remains valid in light of the parties' litigation conduct. *Cf. Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding language "delegating to the arbitrators the authority to determine 'the *validity* or application of any of the provisions of' the arbitration clause" was clear and unmistakable evidence that parties intended arbitrators to decide arbitrability (emphasis added)). The arbitration clause is not clear and unmistakable evidence that the parties intended for an arbitrator to decide claims of waiver by litigation.

Because the arbitration agreement explicitly incorporated the FINRA rules, those rules may also rebut the presumption that the court should decide issues of

waiver by litigation. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013). Couch cites two rules describing (1) how to transfer arbitrable claims to a court of competent jurisdiction, and (2) the procedures for obtaining a "temporary injunctive order" once the parties have submitted an issue to arbitration. FINRA Rules 13803–04. These rules describe steps the parties may take once arbitration proceedings have begun. They are silent as to whether the district court or the arbitrator should decide gateway questions of arbitrability. In the absence of any evidence demonstrating the parties' intent to the contrary, the district court correctly determined that it had the authority to decide whether Couch waived his rights to arbitration through his litigation conduct.

**3.** Finally, Couch contends that the district court erred in granting Morgan Stanley's motion for preliminary injunction. To obtain a preliminary injunction, a plaintiff must demonstrate that: (1) it "is likely to succeed on the merits"; (2) it "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). We review the district court's grant of a preliminary injunction for abuse of discretion. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016).

5

On the merits, Morgan Stanley alleges that Couch waived his right to arbitration by litigating his non-statutory claims in district court. An agreement to arbitrate is deemed waived upon a showing of "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 720-21 (9th Cir. 2012) (citation omitted). Couch does not dispute that he was aware of his right to arbitrate non-statutory employment claims under his employment contract.

The district court reasoned that Couch's inclusion of two economic interference claims[2] in his original complaint – and subsequent litigation of those claims to the eve of summary judgment – was inconsistent with his arbitration right. This was not an abuse of discretion. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988).

Finally, the district court determined that prejudice resulted from Couch's 13-month delay in asserting his rights; the costs incurred in defending the arbitrable claims on the merits in the district court; and the access to discovery

---

[2] California classifies economic interference claims as tort law claims. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003). Thus, the claims were non-statutory and fell within the scope of the arbitration provision.

devices, like depositions and interrogatories, that litigation afforded him, and which would not have been available in arbitration. This is sufficient to demonstrate prejudice under our caselaw. *See Martin v. Yasuda*, 2016 WL 3924381, at \*6 (9th Cir. July 21, 2016) (holding that spending 17 months litigating the case in district court was "conduct inconsistent with [defendants'] right to arbitrate" and satisfied the element of prejudice); *Van Ness*, 862 F.2d at 759 (finding prejudice where party litigated matter through pleadings, motions, and pre-trial conference order, despite a viable right to arbitration, and the opposing party relied on this activity to its detriment). Thus, the district court did not abuse its discretion in concluding that the first *Winter* factor was met.

The district court also did not abuse its discretion in concluding that Morgan Stanley would suffer irreparable harm if forced to arbitrate Couch's non-statutory claims. As explained above, Morgan Stanley has shown a likelihood of success on the merits of its claim that Couch waived his contractual right to arbitration, leaving Morgan Stanley with no duty to arbitrate Couch's non-statutory claims. "One of the threads running through federal arbitration jurisprudence is the notion that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Textile Unlimited, Inc. v. A.BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (holding that the district

7

court did not clearly err in finding party would suffer irreparable harm in absence of stay of arbitration) (citation omitted). The district court was thus within its discretion to conclude that forcing Morgan Stanley to arbitrate Couch's claims, in the likely absence of any contractual duty to do so, would cause it irreparable harm. *Cf. LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) ("[Party] was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate.").

Finally, the district court did not abuse its discretion in concluding that the balance of the equities and the public interest favor granting a preliminary injunction to Morgan Stanley. If arbitration proceedings were not enjoined, Couch's extended delay in asserting his arbitration right would force Morgan Stanley to re-litigate claims it likely has no duty to arbitrate at all. *See Cooper v. Rimmer*, 379 F.3d 1029, 1032 (9th Cir. 2004) (per curiam) (noting that undue delay is a proper consideration for the balance of the equities). By contrast, we see no reason why preliminarily enjoining arbitration proceedings would impair Couch's claims.

As for the fourth *Winter* factor, even given the public policy generally favoring arbitration, enforcing the agreement at this late stage in the litigation

would frustrate the public interest. "The overarching purpose of the Federal Arbitration Act . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Gutierrez*, 704 F.3d at 721 (citation omitted). Here, forcing the parties to arbitrate Couch's non-statutory claims, when it is doubtful that Morgan Stanley has any obligation to do so, would only serve to complicate and extend the proceedings. This does not serve any public interest. Thus, we conclude that the district court did not abuse its discretion when it preliminarily enjoined FINRA arbitration proceedings.

The order of the district court is

**AFFIRMED.**